SIMEON R. KORTH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Korth v. Commissioner
Docket No. 11505-78.
United States Tax Court
T.C. Memo 1981-462; 1981 Tax Ct. Memo LEXIS 280; 42 T.C.M. (CCH) 866; T.C.M. (RIA) 81462; August 26, 1981. Barry Becker, for the petitioner. Martha Combellick, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies in petitioner's Federal income tax of $ 1,623 for 1975 and $ 1,931 for 1976. The issues for decision are: (1) whether petitioner may deduct as educational expenses his costs for maintaining and operating a glider *281 and an aerobatic airplane; (2) whether petitioner is entitled to depreciation deductions for these aircraft; (3) whether petitioner is entitled to an investment tax credit in 1975 for his metric tools and sander and in 1976 for his aerobatic airplane; and (4) whether petitioner may deduct in 1975 telephone expenses and "uniforms and upkeep" costs in excess of the amount allowed by respondent. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner Simeon R. Korth ("petitioner") resided in Mesa, Arizona when he filed his petition. In 1955 the Federal Aviation Administration ("FAA") licensed and certified petitioner as a commercial pilot. During 1975 and 1976 petitioner worked as a copilot for Hughes Airwest ("Hughes"). Since 1960, petitioner has owned a private airplane or glider. On May 1, 1974, petitioner purchased a Fournier RF 4D motor glider for $ 8,442. This singleseat, motorized glider is used in elemental levels of soaring and limitedly for aerobatics. In 1975 and 1976, petitioner used the Fournier to practice various maneuvers, such as rolls, loops, spins, and power off approaches to landings. During 1975 petitioner used *282 the glider for a total of 27 hours and 15 minutes flying time, and on his 1975 return he deducted $ 2,433 in connection with this use as follows: Depreciation
$ 937
Tie-down rent
1,051
Use and P.P. tax
83
Engine repair
328
Gas
34
Total
$ 2,433
Additionally, in 1975 petitioner claimed an investment credit of $ 43 for the purchase of metric tools and a sander he used on his glider. On November 1, 1976, petitioner sold the Fournier RF 4D and reported the gain on his 1976 return. On November 10, 1976, petitioner purchased a Morovan airplane for $ 12,500. The single-seat Morovan is designed strictly for aerobatic maneuvers. In the Morovan, petitioner practiced loops, rolls, stalls, spins, unusual attitude [1] practice and inverted work. During 1976, petitioner used the Fournier and Morovan for a total of 56 hours and 25 minutes flying time, and on his 1975 return petitioner deducted $ 5,862 in connection with this use as follows: Depreciation
$ 2,976
Tie-down rent
1,102
Engine repair
773
Gas and oil
201
Freight
380
Cross-country expense
405
Federal use tax
25
Total
$ 5,862
*283 Petitioner also claimed an investment credit of $ 1,250 in 1976 with respect to the purchase of the Morovan. During 1975 and 1976, the only aircraft flown by Hughes were DC-9 and F-27 jet airplanes; during these years, petitioner flew only DC-9's for Hughes. Hughes provided petitioner with all the training required by the FAA to fly DC-9's. Under FAA regulations, petitioner was tested twice a year for his proficiency as a pilot. The proficiency check and training, supplied by Hughes and required by the FAA, consisted of two days of ground school on aircraft systems, an instrument proficiency check, an oral examination concerning knowledge of the equipment, and a two-hour session in a simulator which recreates actual flight conditions in both emergency and nonemergency situations. The proficiency check performed on the simulator included the practice of a single engine approach. Hughes did not require petitioner to own his own aircraft or to obtain gliding and aerobatic skills. a glider is a far simpler aircraft than the DC-9; the Fournier weighs approximately 900 pounds, whereas a DC-9 weighs approximately 108,000 pounds. DC-9 's glide very poorly, and their descent is *284 approximately three times more rapid than a glider's. There is an extremely limited use, primarily one of instilling confidence in beginner pilots, for aerobatic skills in flying a DC-9. [2] There is very low probability that a DC-9 will permanently lose all thrust, but in that unlikely situation, the chances of a safe landing (which would require ideal weather) would be increased if pilots were given instruction and practice in emergency landings with all engines inoperative. Petitioner is required by Hughes to have a telephone in his home. He uses the telephone 50 percent of the time for professional purposes. Respondent's statutory notice disallowed the deductions and investment credits petitioner took in connection with his glider and aerobatic airplane as being nondeductible personal expenses *285 and not ordinary and necessary business expenses. Respondent also disallowed various employee business deductions in 1975 for lack of substantiation. Petitioner contends that he is entitled to the deductions and credits taken in connection with his aircraft because the repetition of aerobatic maneuvers maintains and improves the skills required of a commercial pilot. He also claims entitlement to deductions for telephone and "uniforms and upkeep" costs as ordinary and necessary business expenses. OPINION Section 162(a) [3] allows a deduction for all ordinary and necessary expenses incurred in carrying on a trade or business, including amounts expended for education. Educational expenses are deductible business expenses when the education maintains or improves the skills required by an individual in his employment. Sec. 1.162-5(a)(1), Income Tax Regs. It must be established that the education bears a direct and proximate relationship to an individual's trade or business before the expense of such education is deductible. Wassenaar v. Commissioner, 72 T.C. 1195, 1201 (1979); Carroll v. Commissioner, 51 T.C. 213, 218 (1968), affd. 418 F. 2d 91 (7th Cir. 1969). *286 Whether there is a direct and proximate relationship between the education and the employment is a question of fact. Baker v. Commissioner, 51 T.C. 243, 247 (1968). The burden is on petitioner to establish this direct relationship. See Wassenaar v. Commissioner, supra at 1199; Rule 142(a), Tax Court Rules of Practice and Procedure.
We find that there are substantial differences between the skills enhanced by flying the Fournier glider and the Morovan aerobatic airplane and those required in petitioner's employment as a DC-9 co-pilot. Although flying a glider or aerobatic airplane may have been of some value to petitioner, such as in generally improving his confidence as a pilot, we find that such skills are not directly and proximately related to the skills needed to fly a DC-9. Petitioner is an experienced and qualified DC-9 pilot who received all the training required by the FAA from his employer. He was tested semi-annually for his proficiency on simulators which created actual flight conditions, including those *287 emergency situations which the FAA deemed to be necessary practice for DC-9 pilots. The FAA did not require a DC-9 pilot to be tested in a total power-off situation because the probability of such condition is remote. Petitioner asserts that flying is a conditioned response which can be improved only through repetition and that, therefore, the skills obtained from flying a glider or aerobatic airplane would increase a DC-9 pilot's chances for safely landing a DC-9 in an emergency. Yet, while practice on a simulator for a DC-9 might prove helpful to a DC-9 pilot in unusual emergency situations, because of the differences in size, weight, and complexity, we are not convinced that practice on a glider would effect the same benefit. Likewise, aerobatic skills might generally aid a DC-9 pilot where the DC-9 flipped upside down, but such an occurrence is extremely rare and the aerobatic skills learned in a glider or aerobatic airplane are not easily applied to the much more sophisticated DC-9. While we recognize that petitioner's flying his glider or aerobatic airplane might improve his overall skills as a pilot, we conclude that petitioner has failed to establish a direct relationship *288 between the unique and highly specialized skills required in flying a commercial jet aircraft as sophisticated as the DC-9 and piloting a single-seat glider or aerobatic airplane. [4] Without this direct relationship, the costs incurred in connection with these aircraft are not deductible. Wassenaar v. Commissioner, supra.
Section 167 provides a depreciation deduction for the exhaustion, wear and tear of property used in a trade or business or held for the production of income. Because we have found that petitioner's use of the Fournier and Morovan aircraft was not directly related to his trade or business, we hold that he is also not entitled to depreciation deductions in connection with these aircraft. Similarly, section 38 provides for a credit against tax for investment in certain depreciable property; *289 employing the same rationale, we hold that petitioner is not entitled to an investment credit with respect to his purchase of metric tools and a sander in 1976 and the Morovan in 1976. Finally, because petitioner has not substantiated his telephone expenses and the expenses for "uniforms and unkeep" in an amount greater than allowed by respondent, he has not shown that he is entitled to these deductions. See Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Decision will be entered under Rule 155. Footnotes
1. In connection with aviation, the term "attitude" refers to the position of an aircraft in relation to a given line or plane, as the horizon. Webster's New World Dictionary of The American Language 90 (1972).↩
2. Although an FAA advisory circular referred to an unspecified "recognized value of acrobatics in pilot training," the purpose of this circular was to provide information to those persons interested in improving their piloting skills "as recreation, sport, or as a competitive activity." We find such evidence to be too general, and to have only slight probative weight here.↩
3. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue.↩
4. Similarly, in Lee v. Commissioner, T.C. Memo. 1981-26↩ (1981), we held that a pilot of DC-9 and Corvair 880 aircraft could not deduct educational expenses incurred in flying a helicopter. We found that there were substantial differences between the tasks and activities involved in flying conventional aircraft and in flying helicopters.